IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIM MCDONALD,

               Plaintiff,

    v.

DENNIS YARCHENKO,

               Defendant.

No. 03:12-cv-00656-HZ

OPINION & ORDER

Gary K. Kahn
REEVES, KAHN, HENNESSY & ELKINS
4035 SE 52nd Avenue
P.O. Box 86100
Portland, OR 97286

      Attorney for Plaintiff

Joseph J. Haddad
JJH LAW, P.C.
351 NW 12th Avenue
Portland, OR 97209

      Attorney for Defendant

1 - OPINION & ORDER

HERNÁNDEZ, District Judge:

Tim McDonald initially filed this action in Washington County Court seeking recovery of $91,513.32 in loans and accrued interest allegedly owed by Dennis Yarchenko.  Yarchenko removed the suit to the United States District Court for the District of Oregon based on diversity jurisdiction.

The crux of McDonald's Complaint is that Yarchenko has failed to pay back the $91,513.32 in loans and accrued interest.  Yarchenko makes a number of counterclaims, the second of which is at issue here.  Yarchenko's second counterclaim alleges McDonald failed to comply with Oregon Revised Statutes ("ORS") 79.0620[1] when McDonald foreclosed on a promissory note signed by the two parties on June 22, 2007 ("Promissory Note").  Now before me is McDonald's Motion for Partial Summary Judgment, which seeks to dismiss Yarchenko's second counterclaim.

For the following reasons, I conclude that McDonald properly foreclosed on the Promissory Note.  Accordingly, McDonald's motion for partial summary judgment is GRANTED.

## BACKGROUND

McDonald and Yarchenko are both members of David Hill LLC (the "LLC"), a member-managed Oregon limited liability company.  The LLC's Operating Agreement shows that the LLC was originally comprised of the following three members: McDonald, Yarchenko, and Mark Dreher.  Haddad Decl., Ex. B, pp. 1-2.  The membership of the LLC was later increased to include the following six members: McDonald; Yarchenko; Dreher; Adrian Maitland; Bill and Michele Maitland, jointly; and David and Carolyn Becker, jointly.  Yarchenko Decl., ¶ 5.

---

[1] ORS 79.0620 adopts the language of Uniform Commercial Code ("UCC") 9-620.

2 - OPINION & ORDER

McDonald's declaration states that in 2007 he made a number of loans to Yarchenko so that Yarchenko could make his 2007 capital contribution to the LLC.  McDonald Decl., ¶ 3. McDonald states that one of the loans he made to Yarchenko was for $22,000, which the parties memorialized in the Promissory Note.  Id., ¶ 4.  The Promissory Note shows that McDonald lent Yarchenko $22,000 and that Yarchenko pledged his one-sixth interest in the LLC as security for the loan.  Id., Ex. 1, pp. 1-2.

According to the terms of the Promissory Note, the outstanding balance of the loan and accrued interest was due on July 1, 2009.  Id., p. 1.  Yarchenko, however, did not pay off the outstanding balance and the accrued interest as he had agreed pursuant to the Promissory Note. On October 29, 2010, McDonald sent Yarchenko a Demand Notice which stated that Yarchenko was in default of the Promissory Note and that if Yarchenko did not pay the loan, McDonald would "take possession of [Yarchenko's] interest in [the LLC]" pursuant to the terms of the Promissory Note.  Id., ¶ 8; Id., Ex., 2, p. 1.  Yarchenko did not respond to the Demand Notice. Id., ¶ 9.

McDonald followed the Demand Notice with a letter dated January 3, 2011, in which he proposed that Yarchenko "sign over [his] shares of [the LLC] in exchange for cancellation of all [of Yarchenko's] debt . . . both secured and unsecured."  Id., ¶ 10; Id., Ex. 3, p. 1.  Attached to the letter was a proposed amendment to the Operating Agreement, which shows McDonald's membership interest as 33.34%—McDonald's previous membership interest of 16.67% plus Yarchenko's membership interest of 16.67%—and which effectively shows Yarchenko as no longer being a member of the LLC.  Haddad Decl., Ex. E, p. 3.  Yarchenko did not respond to McDonald's January 3, 2011, letter.  McDonald Decl., ¶ 11.

On July 27, 2011, McDonald's previous attorney, Frederick Carman, sent another letter to Yarchenko reiterating that Yarchenko had not paid off the Promissory Note. Carman's July 27, 2011, letter also made the "unconditional" proposal that McDonald would accept Yarchenko's 16.67% interest in the LLC "in full satisfaction" of the Promissory Note. Haddad Decl., Ex. F, p. 1. Yarchenko did not respond to McDonald's July 27, 2011, letter, and as of today, the June 22, 2007, loan remains unpaid. McDonald Decl., ¶¶ 14, 15. At oral argument on July 12, 2013, the parties agreed that Yarchenko's membership interest is worth at least $407,335.41.

## STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the

light most favorable to the nonmoving party.  Long v. City & Cnty. of Honolulu, 511 F.3d 901,

905 (9th Cir. 2007).

## DISCUSSION

### I.  Security Interest

McDonald argues that he is entitled to Yarchenko's one-sixth membership interest

because he properly foreclosed on it pursuant to ORS 79.0620.  Yarchenko responds that because

neither party received prior written consent of the non-transferring members as required under

Section 7.1 of the Operating Agreement, the parties did not create a valid security interest in his

membership interest, or alternatively, McDonald should be estopped from taking possession of

his membership interest.  McDonald argues that by signing the Promissory Note, Yarchenko

waived his right to enforce Section 7.1 of the Operating Agreement and challenge the validity of

the security interest.

### A.  Violation of the Operating Agreement

Yarchenko argues that the Promissory Note did not create a valid security interest in his

membership interest because it violated Section 7.1 of the Operating Agreement.  Section 7.1 of

the Operating Agreement provides that "no [m]ember may voluntarily . . . encumber . . . or

otherwise dispose of . . . an interest in the Company without the prior written consent of a

majority of the nontransferring Members on a per capita basis."  Haddad Decl., Ex. B, p. 8.

McDonald argues that he satisfied Section 7.1 of the Operating Agreement because he had prior

written consent or ratification from a majority of the non-transferring members.[2]

---

[2] Previously, both McDonald and Yarchenko appeared to be calculating the required majority of
non-transferring members based on the number of people.  Yarchenko calculated the majority
based on the percentage of membership interest for the first time in his Supplemental Brief.
McDonald did not challenge the percentage calculation method at oral argument. It is
unnecessary to resolve this question as the analysis and outcome are the same under either
calculation.

5 - OPINION & ORDER

The facts here do not establish that McDonald obtained the required consent. McDonald submits a June 19, 2007, fax from David Becker stating, "I talked to Bill and Adrian we are OK with Dennis using his shares as collateral for the loan to you. He should have enough money to pay you back soon." McDonald Second Decl., Ex. 4, p. 1. The fax, however, was only signed by Becker. At most, the fax establishes that only Becker had given his prior written consent allowing McDonald to encumber Yarchenko's membership interest.

McDonald also submits a letter dated June 23, 2007, from Bill and Michele Maitland. Id., Ex. 3, p. 1. It states, "Ok with Dennis using his shares as collateral." Id. This letter, however, was written the day after the parties entered into the Promissory Note and therefore does not amount to prior written consent as required under Section 7.1 of the Operating Agreement.

Finally, McDonald proffers a letter dated May 13, 2013, from Mark Dreher stating, "I was in Mr. McDonald's office on June 22nd 2007 with Mr. Yarchenko when Mr. McDonald loaned Mr. Yarchenko $22,000. I approved the use of his shares as collateral in 2007." Id., Ex. 2, p. 1. Although this letter references the date the parties entered into the Promissory Note, it was written almost six years after the parties had entered into the Promissory Note and consequently, does not qualify as prior written consent pursuant to the Operating Agreement.

In sum, the documents submitted by McDonald do not show that the parties obtained the requisite prior written consent before encumbering Yarchenko's membership interest as required under Section 7.1 of the Operating Agreement. The June 23, 2007, letter and May 13, 2013, letter were written after the Promissory Note had already been signed and do not constitute prior written consent by the other members. Even if the Promissory Note itself constituted prior written consent by McDonald, the evidence before me would still not amount to prior written

consent by a majority of the non-transferring members, whether calculated by person or by percentage of their membership interest.

**B. Waiver**

Even if the Promissory Note violated Section 7.1 of the Operating Agreement, the note would still be a valid security agreement because Yarchenko waived his right to enforce Section 7.1 of the Operating Agreement.  Waiver "is a generic term which denotes the termination of a party's rights by any one of several different kinds of action or conduct." Reserve Life Ins. Co. v. Howell, 357 P.2d 400, 405 (Or. 1960).  "The party who possesses a right . . . may so conduct himself that he justifiably induces the other party (a) to believe that he will not assert or exercise his right and (b) to change his position to such an extent that if the first party is permitted to insist upon his rights he (the second party) will be prejudiced." Id.

The parties were ordered to specifically address the issue of waiver at oral argument held on July 12, 2013.  McDonald argues that Yarchenko waived his right to enforce Section 7.1 of the Operating Agreement by accepting the benefits of the contract.  Additionally, McDonald argues that since Yarchenko signed the Operating Agreement and was aware of its terms, including those in Section 7.1, Yarchenko waived any right to enforce Section 7.1 of the Operating Agreement.  McDonald Supp. Mem., pp. 3-4.

Yarchenko argues that he did not waive his right to enforce the Operating Agreement.  To support this argument, he cites two bankruptcy court cases.  In both cases, the court invalidated a security interest that was created in violation of restrictive agreements similar to Section 7.1 of the Operating Agreement.  In the first case cited by Yarchenko, a third party sought to recover a security interest during a bankruptcy proceeding. In re McKenzie, No. 08-16378, 2011 WL 2118689, at *1 (Bankr. E.D. Tenn. May 27, 2011).  The court held that because the shares were

7 - OPINION & ORDER

encumbered without prior written consent by the Board of Governors, as required under the

terms of the operating agreement, the security interest did not attach. Id. at *8. I am not

persuaded by that case as it involved the interests of a third party trustee who was not a party to

either the contract creating the security interest or the contract sought to be enforced. In the

present case, there are no third party interests and I am only determining the rights to the security

interest as between McDonald and Yarchenko, who are both parties to the Operating Agreement

and are the only parties to the Promissory Note.

In the second case cited by Yarchenko, a bank sought a declaratory judgment that it held

a valid security interest in the stock pledged. Timberland Bancshares, Inc. v. Garrison, 462 B.R.

666, 670-71 (Bankr. W.D. Ark. 2011). In that case, the corporation whose stocks were pledged

sought a declaration that the security interest was void because it violated a stock restrictive

agreement requiring the written consent of the other shareholders. Id. at 671. The court ruled in

favor of the corporation and held the security interest invalid. Id. at 682. I am not persuaded by

that case. Unlike Garrison, here the party bringing the claim is one of the parties to the

Promissory Note and also a party to the Operating Agreement sought to be enforced.

At oral argument, McDonald relied on In re Buerge, 479 B.R. 101, 111 (Bank. Kan.

2012), for the proposition that Garrison does not apply and that Section 7.1 of the Operating

Agreement is meant to protect the non-transferring members' interests, not the transferor's. In

that case, the court refused to follow the principle applied in Garrison, holding that, "[t]ransfer

restrictions in shareholder agreements protect the company and the non-transferring

shareholders, not the seller." Id. The court also concluded that "the transfer restriction

beneficiaries can waive compliance by acquiescence in a transfer of the particular stock . . . [or]

by a course of conduct on the part of the stockholder seeking to enforce the agreement directly

inconsistent with a position subsequently taken." Id.  By signing the Promissory Note and

pledging his membership interest in the LLC as collateral, Yarchenko was conducting himself in

such a way as to induce McDonald to believe Yarchenko would not later challenge the validity

of the Promissory Note by enforcing Section 7.1 of the Operating Agreement.  Changing that

position, as Yarchenko attempts to do here, would prejudice McDonald by converting the

Promissory Note from a secured to an unsecured loan.  Therefore, Yarchenko's actions

constituted a waiver of the right to enforce Section 7.1 of the Operating Agreement.

Accordingly, McDonald has a valid security interest in Yarchenko's membership interest in the

LLC.

### C. Foreclosure Under ORS 79.0620

McDonald contends that he followed the procedure set forth in ORS 79.0620 and thus

has properly foreclosed on Yarchenko's membership interest in the LLC.  Yarchenko's briefings

on this issue apply the wrong statute.  Yarchenko asserts that McDonald failed to dispose of the

collateral in a commercially reasonable manner under ORS 79.0610 and failed to properly notify

Yarchenko of his alleged disposition of the collateral under ORS 79.0611.  Neither of those

statutes applies to the actions taken by McDonald, who was operating under ORS 79.0620.

Comment 1 to the UCC section 9-620, which is incorporated into Oregon law at ORS 79.0620,

states:

> [UCC 9-620] and the two sections following deal with strict foreclosure, a procedure by
> which the secured party acquires the debtor's interest in the collateral without the need
> for a sale or other disposition under Section 9-610. . . .  [S]trict foreclosures should be
> encouraged and often will produce better results than a disposition for all concerned.

U.C.C. § 9-620 cmt. n. 1 (2010).  Comment 1 clarifies that strict foreclosure is encouraged and is

not governed by the other requirements for disposition under ORS 79.0610 or 79.0611, the

sections on which Yarchenko relies.

9 - OPINION & ORDER

Applying ORS 79.0620, I conclude that McDonald properly foreclosed on Yarchenko's collateral in full satisfaction of the obligation.  Under ORS 79.0620, "A debtor consents to an acceptance of collateral in full satisfaction of the obligation it secures" if the secured party:

> (A) Sends to the debtor after default a proposal that is unconditional or subject only to a condition that collateral not in the possession of the secured party be preserved or maintained;
>
> (B) In the proposal, proposes to accept collateral in full satisfaction of the obligation it secures; and
>
> (C) Does not receive a notification of objection authenticated by the debtor within 20 days after the proposal is sent.

ORS 79.0620(3)(b)(A)-(C).  Here, McDonald sent Yarchenko an unconditional proposal after Yarchenko had defaulted on his loan, proposing to accept Yarchenko's membership interest in the LLC in full satisfaction of the Promissory Note and the unsecured loans Yarchenko owed to McDonald.  The record shows that on July 27, 2011, McDonald sent a letter stating, "Mr. McDonald proposes to accept the collateral securing the note which consists of a 16.67% interest in David Hill Development LLC in full satisfaction of the secured promissory note.  This proposal is unconditional.  You do not have to take any action in order to accept this proposal." Haddad Decl. Ex. F, p. 1.  Yarchenko did not respond to that letter, let alone respond within 20 days as required under ORS 79.0620(3)(b)(C).  McDonald Decl., ¶ 14.  In other words, the July 27, 2011, letter and Yarchenko's failure to object constituted acceptance of Yarchenko's membership interest in the LLC as full satisfaction of the Promissory Note under ORS 79.0620.

Yarchenko argues this award, "which is worth approximately $1.6 million, would be a windfall for Plaintiff and an unjust and devastating loss for Mr. Yarchenko, especially considering that Mr. Yarchenko only barrowed [sic] $22,000 from Plaintiff and has repaid

10 - OPINION & ORDER

$10,000." Yarchenko Supp. Brief, p. 8. The Official Comments to the UCC allude to this issue

in the context of the obligation of good faith, stating:

> [I]n the normal case proposals and acceptances should be not second-guessed on the basis
> of the "value" of the collateral involved. Disputes about valuation or even a clear excess
> of collateral value over the amount of obligations satisfied do not necessarily demonstrate
> the absence of good faith.

U.C.C. § 9-620 cmt. n. 11 (2010). That McDonald's strict foreclosure may result in a windfall

does not, by itself, amount to bad faith or otherwise render the foreclosure improper under ORS

79.0620. See Eddy v. Glen Devore Pers. Trust, 131 Wash. App. 1015 (Wash. App. 2006)

(unpublished) (rejecting the argument that "the transaction was unconscionable because

tendering a $90,000 promissory note for a $5,000 debt is unconscionable on its face and strict

foreclosure resulted in a windfall for the Trust" under the same section of the UCC).

## II. Estoppel

Yarchenko maintains that McDonald should be estopped from possessing or otherwise

disposing of his membership interest because McDonald violated the Operating Agreement.

Based on the record before me, I conclude that Yarchenko is not entitled to estoppel.

> To constitute an equitable estoppel or estoppel by conduct, there must be (1) a
> false representation, (2) made with knowledge of the facts, and (3) the other party
> must have been ignorant of the truth; (4) it must have been made with the
> intention that it should be acted upon by the other party; and (5) the other party
> must have been induced to act upon it.

Hess v. Seeger, 55 Or. App. 746, 760-61 (1982).

Yarchenko makes no argument and proffers no evidence demonstrating a false

representation by McDonald or that McDonald made a false representation with knowledge of

the facts. Yarchenko also fails to present any evidence showing that he was ignorant of the truth

that the other members of the LLC had not given prior written consent. Indeed, as a signatory to

11 - OPINION & ORDER

the Operating Agreement, Yarchenko was well aware of the requirements of Section 7.1.[3]

Yarchenko also presents no evidence showing that McDonald made a misrepresentation with the

intent that Yarchenko act upon that misrepresentation or that Yarchenko was induced to act on a

misrepresentation.  In short, Yarchenko makes an insufficient showing that he is entitled to

estoppel.

## III.  Standing

McDonald argues that Yarchenko lacks standing to challenge the validity of the

Promissory Note based on McDonald's alleged violation of Section 7.1 of the Operating

Agreement.  Because I hold that Yarchenko waived his right to enforce the Operating

Agreement, I decline to reach the issue of standing.

CONCLUSION

Based on the foregoing, McDonald's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated this ____ day of July, 2013.

MARCO A. HERNÁNDEZ
United States District Judge

---

[3] Yarchenko argued he lacked knowledge of Section 7.1 of the Operating Agreement for the first time at oral argument.  He, however, submits no evidence to support this claim.  Moreover, the record clearly shows Yarchenko was a signatory to the Operating Agreement, which as stated above, included Section 7.1.

12 - OPINION & ORDER